# THE KAPLAN / BOND GROUP

David B. Kaplan
Thomas M. Bond
Tracey N. Kaplan
Brian Keane

*Attorneys at Law and Proctors in Admiralty*
*88 Black Falcon Avenue, Suite 301*
*Boston, Massachusetts 02210*

*(617) 261-0080*
*Fax (617) 261-1558*

March 16, 2006

**VIA EMAIL AND FIRST-CLASS MAIL**

Gino A. Zonghetti, Esq.
Kenny, Stearns & Zonghetti
26 Broadway
New York, NY 10004
gzonghetti@kszlaw.com

RE:    Sinatra v. Boston Towing & Transportation Co., et. al.
       U.S.D.C. For The District of Massachusetts, Civil Action No. 04-11077-NG

Dear Counsel:

In response to your email dated March 15, 2006, this communication shall represent our last-ditch effort to stipulate the conditions of the IME that you have requested.

BACKGROUND
As you are aware, our client has already had two IMEs related to the November 14, 2002 injury that is the subject of the above-referenced action. We attached those two reports to our Settlement Proposal dated November 23, 2005. Though both are attached here for your convenience as Exhibit A, the following is a brief recap of each:

- "Exhibit B" to that proposal was a report dated October 27, 2003 and authored by Dr. Joseph Abate at the request of Mr. Sinatra's Worker's Compensation Attorney, Michael F. Walsh.

- "Exhibit C" to our proposal was a report dated September 26, 2005 and authored by Dr. Andrew I. Forrest at the request of the opposition to the workman's compensation claim, Liberty Mutual (via Medical Evaluation Solutions), regarding the same Worker's Compensation claim.

Both reports were drafted by highly qualified doctors hired by opposite sides of a separate dispute centered upon the same injury that is the basis of our dispute. And, most importantly, each doctor examined Mr. Sinatra in the same manner you now propose.

EXHIBIT "D"

# THE KAPLAN / BOND GROUP

## THE PROPOSED IME

The proposed IME imposes an undue burden and expense upon our client.

1. Two examinations of the same injury have already been conducted by suitably licensed and certified examiners – an insurance defense examination as recently as September 26, 2005.

2. On February 25, 2006, due to financial hardship, our client was forced to move to Bar Harbor, Maine.  As a result, our client currently lives 289 driving miles from your examiner – round-trip, that equates to a 10 hour and 40 minute drive across 578 miles. *See* MapQuest Driving Directions attached as Exhibit B.

3. Our client continues to experience quite a bit of back pain and cannot drive more than one hour without having to take a break.  This necessity increases the 10 hour and 40 minute trip into a 15+ hour ordeal.  This requires an overnight stay.

4. Our client remains unemployed and, as a result, does not have the financial resources to make the trip you propose.

5. Equally qualified examiners are readily available within fifty miles of Bar Harbor, Maine. The selection of such an examiner local to our client would be more convenient, less burdensome and less expensive – AND even more independent than the doctor you currently propose.

Notwithstanding all of the above-stated burdens your request imposes upon our client, and as stated in our letter dated March 14, 2006, we are willing to make our client available for your IME, without the need for a court order, but only so long as the terms are fair.

We feel the following terms are more than fair:

## Option I
Please schedule the IME with a doctor of your choosing within one hour and/or 50 miles of Bar Harbor, Maine.  Our client shall be made available at the date and time you require.

## Option II
We are willing to make our client available in Quincy pursuant to the following terms:

1. Please have the start time changed to 1 p.m. or later so that our client can make the 7+ hour drive without having to leave prior to 6 a.m.

2. Pursuant to the Federal Rules of Civil Procedure, state the conditions and scope of the examination.

3. Kindly stipulate that the only parties that shall be present at the examination will be our client and your doctor.

## THE KAPLAN / BOND GROUP

4. Send us a check made payable to our client in the amount of $200 to cover his travel expenses. Please keep in mind that this sum is more than fair. If we were to apply the GSA's Privately Owned Vehicle Mileage Reimbursement Rate, currently $0.445 per mile, the total sought would be $277.24 ($257.24 for mileage plus $20 for tolls). *See* GSA Rates attached as Exhibit C.

5. We do not seek reimbursement for food or lodging as our client has a friend he can convalesce with overnight.

Mr. Zonghetti, it is our sincere hope that, pursuant to Fed.R.Civ.P. 26(c) and LR 37.1, we shall be able to negotiate a mutually amenable solution to our current dispute.

Please advise at your first convenience.

Sincerely,

DAVID B. KAPLAN

DBK/jjb
Encl.
cc:    Brandon L. Bigelow, Esq.
       Kenneth Chiarello, Esq.