# THE KAPLAN / BOND GROUP

David B. Kaplan
Thomas M. Bond
Tracey N. Kaplan
Brian Keane

*Attorneys at Law and Proctors in Admiralty*
88 Black Falcon Avenue, Suite 301
Boston, Massachusetts 02210

(617) 261-0080
Fax (617) 261-1558

March 16, 2006

**VIA EMAIL AND FIRST-CLASS MAIL**

Gino A. Zonghetti, Esq.
Kenny, Stearns & Zonghetti
26 Broadway
New York, NY 10004
gzonghetti@kszlaw.com

RE:  Sinatra v. Boston Towing & Transportation Co., et. al.
     U.S.D.C. For The District of Massachusetts, Civil Action No. 04-11077-NG

Dear Counsel:

In response to your email dated March 15, 2006, this communication shall represent our last-ditch effort to stipulate the conditions of the IME that you have requested.

BACKGROUND
As you are aware, our client has already had two IMEs related to the November 14, 2002 injury that is the subject of the above-referenced action. We attached those two reports to our Settlement Proposal dated November 23, 2005. Though both are attached here for your convenience as Exhibit A, the following is a brief recap of each:

- "Exhibit B" to that proposal was a report dated October 27, 2003 and authored by Dr. Joseph Abate at the request of Mr. Sinatra's Worker's Compensation Attorney, Michael F. Walsh.

- "Exhibit C" to our proposal was a report dated September 26, 2005 and authored by Dr. Andrew I. Forrest at the request of the opposition to the workman's compensation claim, Liberty Mutual (via Medical Evaluation Solutions), regarding the same Worker's Compensation claim.

Both reports were drafted by highly qualified doctors hired by opposite sides of a separate dispute centered upon the same injury that is the basis of our dispute. And, most importantly, each doctor examined Mr. Sinatra in the same manner you now propose.

1

# THE KAPLAN / BOND GROUP

THE PROPOSED IME
The proposed IME imposes an undue burden and expense upon our client.

1. Two examinations of the same injury have already been conducted by suitably licensed and certified examiners – an insurance defense examination as recently as September 26, 2005.

2. On February 25, 2006, due to financial hardship, our client was forced to move to Bar Harbor, Maine. As a result, our client currently lives 289 driving miles from your examiner – round-trip, that equates to a 10 hour and 40 minute drive across 578 miles. *See* MapQuest Driving Directions attached as Exhibit B.

3. Our client continues to experience quite a bit of back pain and cannot drive more than one hour without having to take a break. This necessity increases the 10 hour and 40 minute trip into a 15+ hour ordeal. This requires an overnight stay.

4. Our client remains unemployed and, as a result, does not have the financial resources to make the trip you propose.

5. Equally qualified examiners are readily available within fifty miles of Bar Harbor, Maine. The selection of such an examiner local to our client would be more convenient, less burdensome and less expensive – AND even more independent than the doctor you currently propose.

Notwithstanding all of the above-stated burdens your request imposes upon our client, and as stated in our letter dated March 14, 2006, we are willing to make our client available for your IME, without the need for a court order, but only so long as the terms are fair.

We feel the following terms are more than fair:

Option I
Please schedule the IME with a doctor of your choosing within one hour and/or 50 miles of Bar Harbor, Maine. Our client shall be made available at the date and time you require.

Option II
We are willing to make our client available in Quincy pursuant to the following terms:

1. Please have the start time changed to 1 p.m. or later so that our client can make the 7+ hour drive without having to leave prior to 6 a.m.

2. Pursuant to the Federal Rules of Civil Procedure, state the conditions and scope of the examination.

3. Kindly stipulate that the only parties that shall be present at the examination will be our client and your doctor.

## THE KAPLAN / BOND GROUP

4. Send us a check made payable to our client in the amount of $200 to cover his travel expenses. Please keep in mind that this sum is more than fair. If we were to apply the GSA's Privately Owned Vehicle Mileage Reimbursement Rate, currently $0.445 per mile, the total sought would be $277.24 ($257.24 for mileage plus $20 for tolls). See GSA Rates attached as Exhibit C.

5. We do not seek reimbursement for food or lodging as our client has a friend he can convalesce with overnight.

Mr. Zonghetti, it is our sincere hope that, pursuant to Fed.R.Civ.P. 26(c) and LR 37.1, we shall be able to negotiate a mutually amenable solution to our current dispute.

Please advise at your first convenience.

Sincerely,

*David B. Kaplan*
DAVID B. KAPLAN

DBK/jjb
Encl.
cc:     Brandon L. Bigelow, Esq.
        Kenneth Chiarello, Esq.

## John Bromley

**From:** John Bromley
**Sent:** Thursday, March 16, 2006 4:16 PM
**To:** 'Gino Zonghetti'
**Cc:** Bigelow, Brandon L.; kchiarello@clinmuzyka.com
**Subject:** RE: Sinatra; IME Dispute
**Attachments:** Zonghetti ~ IME costs ~ 3.16.06.pdf

Dear Mr. Zonghetti:

Attached please find Attorney Kaplan's response to your emails of March 15 and 16, 2006.

Sincerely,
John J. Bromley
Law Clerk for
ATTORNEY DAVID B. KAPLAN
**THE KAPLAN/BOND GROUP**
88 Black Falcon Avenue, Suite 301
Boston, MA 02210
P: (800) 864-0051
F: (617) 261-1558

---

**From:** Gino Zonghetti [mailto:gzonghetti@kszlaw.com]
**Sent:** Thursday, March 16, 2006 2:32 PM
**To:** Gino Zonghetti; John Bromley; kchiarello@clinmuzyka.com
**Cc:** Bigelow, Brandon L.
**Subject:** RE: Sinatra; IME Notification

Dear Mr. Bromley:

    We have not heard from you about the below. If we do not hear from you today we will assume that plaintiff refuses to attend his IME unless he is paid to do so and will file a motion to compel. Please advise.

Gino A. Zonghetti<br>
Kenny, Stearns & Zonghetti<br>
26 Broadway<br>
New York, New York 10004<br>
(212) 422-6111

-----Original Message-----
**From:** Gino Zonghetti
**Sent:** Wednesday, March 15, 2006 10:47 AM
**To:** 'John Bromley'; kchiarello@clinmuzyka.com
**Cc:** Bigelow, Brandon L.
**Subject:** RE: Sinatra; IME Notification

Dear Mr. Bromley:

    Please note that we haven intention of paying Mr. Sinatra anything for attending the scheduled IME. We are unsure of the basis for your demand for $200 for him to attend an IME within the jurisdiction of the United States District Court for the District of Massachusetts in a case that he chose to venue in that court and we are certain there is no support for the claim. As you are aware, plaintiff chose to sue in

3/16/2006

## NORTH SUBURBAN ORTHOPEDIC ASSOCIATES, INC.

602 BROADWAY
EVERETT, MASSACHUSETTS 02149
(781) 665-9500 / (617) 387-6200

405 PEARL STREET
MALDEN, MASSACHUSETTS 02148
(781) 665-9500
FAX (781) 665-3856
WWW.NORTH-SUBURBANORTHO.COM

721 MAIN STREET
MELROSE, MASSACHUSETTS 02176
(781) 665-9500

**ORTHOPEDIC SURGERY**
JOSEPH ABATE, M.D.
JOEL A. SAFERSTEIN, M.D.
JOHN J. LYNCH, M.D.
ROBERT A. HARNEY, M.D.
MARK M. BERENSON, M.D.

**SPINE SURGERY**
WOJCIECH BULCZYNSKI, M.D.

**ORTHOPEDIC MEDICINE**
ALBERT V. FRANCHI, M.D.
LUBA ROSEN, M.D.
ROBERT G. McGUIRD, P.A.C.

**DIRECTOR P.T.**
MARIA O'LAUGHLIN, RPT

**PRACTICE MANAGER**
ROGER E. MORIN, MBA

October 27, 2003

Mr. Michael F. Walsh, P.C.
1200 East Street
Westwood, MA 02090

RE: JAMES SINATRA
2709 Dam Road
ERROL, NH 03579
DOB: December 18, 1961
DOI: 11/14/02

Dear Attorney Walsh:

In response to your recent request narrative medical report regarding Mr. James Sinatra submitted to your attention.

James, 40, presented for orthopedic consultation and management on 12/9/02. He gave history of injury, primarily to his low back, while on board a tugboat in Boston Harbor on 11/14/02. He stated that in the performance of his duties, he was required to jump from a ladder on the tugboat, to the other boat, sustaining significant injury to his low back. He reported to the Whidden Memorial Hospital emergency room n 11/17/02 where he was evaluated, had x-rays and treated with medication. He continued with severe pain of his back, buttocks and both lower legs.

He had no significant past history.

Examination revealed a heavy male with marked guarding and restriction motion of the lumbar spine. He was barely able to reach knees with fingertips in forward flexion and had significant restriction of lateral rotation. There was no neurological deficit. X-ray revealed no bone abnormality.

He was treated conservatively with medication and physical therapy. He was felt to be totally disabled.

He continued to be seen every two to three weeks, but continued with significant lumbar restriction.

He had bone scan on 1/30/03 at the Jordan Hospital which was normal.

He was advised to continue with exercise program including health club membership.

With persistent symptoms of spams and rigidity he continued to be disabled.

Because of financial difficulties, he moved to New Hampshire, sometime in June 2003.

He continued to require exercise and medication with persistent lumbar symptoms and restriction.

He was last seen n 10/9/03 indicating some improvement of his low back, but with continued restrictions in bending, lifting and difficulty sleeping. He continued to require Ultram for pain.

DIAGNOSIS: CONTUSION/STRAIN LUMBAR SPINE

ASSESSMENT: On the basis of history, physical examination, x-ray and bone scan, it is my opinion based on reasonable medical certainty that Mr. James Sinatra sustained injury to his low back at work on 11/14/02 causing total disability to 10/16/03. It is further my opinion, that Mr. Sinatra has reached end stage of medical treatment and continues with significant partial disability with restriction of no squatting, kneeling, crawling, limited bending and climbing, maximum lifting of twenty-five pounds, and necessity of changing positions every thirty minutes. Partly because of his body habitus with overweight condition, prognosis is guarded.

If I could be of further assistance, please do not hesitate to contact me.

Sincerely,

JOSEPH ABATE MD

JA/wmf

Subscribed and sworn to under the penalties of perjury.

OC -17-2005 15:37          DR & ZULLO LLP                    1 617 889 8889    P.05



| LITTLETON REGIONAL HOSPITAL | Page 1 of 2 |
| LITTLETON, NEW HAMPSHIRE 03561 | |

### PHYSIATRY NOTES

| Patient Name: | SINATRA JAMES | Patient Number: | B04198 |
| Patient DOB: | 12/18/1961 | Med Rec Number: | B04198 |
| Physician: | FORREST ANDREW MD | Referring Physician: | |

DATE: 09/26/05

INDEPENDENT MEDICAL EXAMINATION

REQUESTED BY:    Medical Evaluation Solutions
                 500 West Cummings Park, Suite 4050
                 Woburn, MA 01801

RE: James Sinatra

CLAIM #: WC101966594

DATE OF INJURY: 11/14/2002

MES FILE #: 205089342

**CHIEF COMPLAINT**
Low back pain.

**HISTORY**
The patient is a pleasant 43-year-old male who denies prior history of back problems. He does have a prior history of a Workman's Compensation injury in 1991 where he broke a bone in his left foot. This was not treated surgically. On 11/14/2002, he was doing a job, which required him to climb a ladder from a tugboat to an oil tanker. The tugboat and the oil tanker were moving in 9-foot swells. He was warned to jump because, evidently, the ladder was going to fall from one boat or the other, and he rapidly climbed the last remaining few feet and pulled himself physically up onto the oil tanker and fell striking his back. He had the instantaneous onset of back pain that did not improve and indeed within the next several days got worse. He sought medical attention. He had plain films done, which according to the records, were negative. He was diagnosed with a lumbosacral contusion. He continued to have pain that would radiate in his back down his legs as far as the knees. The side which the pain radiates to has varied over the years and there is no real rhyme or reason as to which leg bothers more. He continued to attempt to get better. He had a course of physical therapy. He sought attention from orthopedists and has had increased pain with sitting relative to standing. He ultimately came to a bone scan that was negative and has also had an MRI of his lumbar spine done in September 2003 (09/10/03 specifically) demonstrating mild disc degeneration. He had a treatment by a chiropractor done this year, who did thermography and sensory nerve testing by an alternative to formal EMG testing. He did not have a formal EMG. The sensory testing provided by the chiropractor was interpreted as normal. Because of ongoing pain, he started to undergo a series of lumbar facet blocks, which afforded him temporary relief. Radiofrequency neuroablation was advised, but in the interim between the time it was advised and when it was actually performed, he suffered a second injury to his lumbar spine. He was lifting a piece of test control equipment and had a lancinating severe pain in his lumbar spine. When he originally was injured he had close to 10/10 pain, which over the years slowly abated to a level of about 3-4/10 in intensity. With the lifting incident on December 24, 2004, his pain went back to 10/10. Complicating this case is the fact that the second injury occurred for a different employer and with a different Workman's Compensation Carrier. He is quite clear in his history and the records do corroborate this that have been provided me, that he was never totally pain-free following the 11/14/2002 incident, but did have a severe exacerbation on 12/24/2004. He has gained weight since his original injury. He originally weighed around 195 and now weighs 250. He got down to around 210 last year before he was injured the second time. He is currently taking Vicodin and ibuprofen. He denies drug allergies. He does not smoke or drink. He has no loss of bowel or bladder control. He has no fevers, chills, general malaise. I am asked to see him for an independent medical exam.

LITTLETON REGIONAL HOSPITAL
LITTLETON, NEW HAMPSHIRE 03561

Page 2 of 2

### PHYSIATRY NOTES

| | | | |
|---|---|---|---|
| Patient Name: | SINATRA JAMES | Patient Number: | B04198 |
| Patient DOB: | 12/18/1961 | Med Rec Number: | B04198 |
| Physician: | FORREST ANDREW MD | Referring Physician: | |

**PAST MEDICAL HISTORY**
Negative aside from above.

**FAMILY HISTORY**
Noncontributory.

**SOCIAL HISTORY**
Please see above.

**REVIEW OF SYSTEMS**
Negative aside from above.

**PHYSICAL EXAMINATION**
A pleasant, uncomfortable appearing man in mild to moderate distress. He is moderately overweight. He has normal lower extremity strength, tone, sensation and deep tendon reflexes with bilateral down going toes. Frank muscle guarding is noted in his lumbar spine with moderate diminution of spinal range of motion. He has increased pain with spinal flexion, extension, side bending to the right and rotation to the left. He particularly complains of pain in the region of the L4-L5 facet on the left. PSIS are difficult to be appreciated due to patient body habitus.

**ASSESSMENT**
Lumbar facet syndrome.

**DISCUSSION**
Answers to your questions are as follows. The diagnosis of lumbar facet syndrome is causally related to the 11/14/2002 injury with a reasonable degree of medical certainty. However, it is also equally clear that the incident of 12/24/2004 significantly exacerbated a condition that had not resolved but was improving. Who ultimately bears responsibility for this is a matter of Massachusetts Workman's Compensation Law rather than medicine. The treatment that he has received is reasonable with the exception of the thermography and the chiropractor placed nerve test. This is an incomplete study and is not really reasonable for the chiropractor to have done. Formal EMG testing would be reasonable performed by a neurologist and/or a physiatrist, and I indeed would recommend that this be done. I would also recommend a repeat MRI be done at the current time to make sure he does not have bilateral L5 radiculopathies as opposed to a facet syndrome, which I am supposing based upon his physical exam characteristics. The previous MRI should be compared to the new MRI. The disc dislocation that was noted on the MRI of 09/10/2003 is a bit more difficult to ascribe; the work injury could produce this. However, his body habitus and age could also produce this and one cannot really separate amongst those three. He is not able to return to work without restrictions. I would recommend more definitive treatment before any attempts to return to work are done and then to delineate what his appropriate work restrictions are, I recommend a formal functional capacity evaluation. As I do have treatment recommendations, he is not yet at maximum medical improvement and, therefore, impairment rating is premature. If there are further questions, do not hesitate to contact me.

Andrew I. Forrest, MD
AIF:lmt
D: 09/26/05 1508
T: 09/30/05 1243



# MAPQUEST

**START** **15 Eagle Lake Rd**
Bar Harbor, ME 04609-1031, US

**END** **909 Hancock St**
Quincy, MA 02170-3827, US

**Total Est. Time:** 5 hours, 19 minutes

**Total Est. Distance:** 289.03 miles

## Maneuvers

| | | Distance |
|---|---|---|
| **START** | **1:** Start out going WEST on EAGLE LAKE RD / ME-233 toward CROSS ST. | <0.1 miles |
| ↓ | **2:** Turn RIGHT onto CROSS ST. | <0.1 miles |
| ↓ | **3:** Turn RIGHT onto PROSPECT AVE. | 0.1 miles |
| 3 | **4:** Turn LEFT onto EDEN ST / ME-3. Continue to follow ME-3 N. | 19.2 miles |
| → | **5:** Stay STRAIGHT to go onto OAK ST / US-1A. Continue 23.0 miles to follow US-1A. | |
| 395 | **6:** Merge onto I-395 W. | 5.0 miles |
| 95 | **7:** Merge onto I-95 S via EXIT 1A toward NEWPORT. | 79.6 miles |
| 295 | **8:** Merge onto I-295 S via EXIT 103 toward ME-9 / GARDINER / ME-126 / BRUNSWICK (Portions toll). | 53.1 miles |
| 95 | **9:** Merge onto I-95 S (Portions toll). | 83.8 miles |

| | | |
|---|---|---|
| 10: Merge onto US-1 S via EXIT 46 toward BOSTON (Portions toll). | | 14.4 miles |
| 11: Merge onto I-93 S / US-1 S. | | 7.4 miles |
| 12: Take EXIT 12 toward RT-3A S / NEPONSET / QUINCY. | | 0.1 miles |
| 13: Turn SLIGHT RIGHT onto GALLIVAN BLVD / MA-203 E. | | 0.1 miles |
| 14: Turn SLIGHT RIGHT onto NEPONSET AVE / MA-3A S. | | 0.1 miles |
| 15: NEPONSET AVE / MA-3A S becomes NEPONSET BRIDGE. | | 0.1 miles |
| 16: NEPONSET BRIDGE becomes HANCOCK ST. | | 0.1 miles |
| 17: Turn SLIGHT RIGHT onto NEWPORT AVE EXT. | | 0.6 miles |
| 18: NEWPORT AVE EXT becomes NEWPORT AVE. | | 0.8 miles |
| 19: Turn LEFT onto BEALE ST. | | <0.1 miles |
| 20: Turn RIGHT onto OLD COLONY AVE. | | <0.1 miles |
| 21: Turn SLIGHT LEFT onto STANDISH AVE. | | 0.3 miles |
| 22: Turn SLIGHT RIGHT onto HANCOCK ST / MA-3A. | | <0.1 miles |
| 23: Keep RIGHT at the fork to go on HANCOCK ST. | | 0.1 miles |

**24:** End at **909 Hancock St**
Quincy, MA 02170-3827, US

Total Est. Time: 5 hours, 19 minutes    Total Est. Distance: 289.03 miles

Case 1:04-cv-11077-NG   Document 30-5   Filed 04/11/2006   Page 11 of 14





**GSA** U.S. General Services Administration

HOME | BUILDINGS | PRODUCTS | SERVICES | TECHNOLOGY | POLICY | ABOUT GSA

Customize Your Visit | MyGSA

SEARCH

Travel Management
- Overview
- FAQ
- Per Diem
- State Tax Rates & Exemption Forms
- Travel & Relocation Innovation Award
- POV Mileage Reimbursement Rates
- Commuted Rate Schedule
- Federal Traveler's Quick Reference Guide
- GSA Relocation Policy Guide
- GSA Travel Advisories
- Interagency Travel Mgmt Committee (ITMC)
- Travel Mgmt Policy Notification Mail
- Hurricane Katrina Q & As
- Library

Home > Policy > Travel Management > POV Mileage Reimbursement Rates

# Privately Owned Vehicle (POV) Mileage Reimbursement Rates

**2006 POV Mileage Reimbursement Rates**

GSA has established the mileage reimbursement rates for federal employees who use privately owned vehicles while on official travel.

The rates for the use of these modes of transportation, effective January 1, 2006, are as follows:

**Privately Owned Vehicle Reimbursement Rates:**

- Airplane .......... $1.07 per mile
- Automobile Rates:
  - 44.5 cents per mile (If no Government Owned Vehicle available)
  - 28.5 cents per mile (If Government Owned Vehicle available)
  - 12.5 cents per mile (If committed to use Government Owned Vehicle)
- Motorcycle POV Rate ..... 30.5 cents per mile

Past year's automobile rates are as follows:

| Effective Date | Rate |
|---|---|
| January 1, 2006 | $0.445 |
| September 1, 2005 | $0.485 |
| February 4, 2005 | $0.405 |
| January 1, 2004 | $0.375 |

**CONTACTS**
Additional Contacts For Travel Management Policy

**e-TOOLS**
TMC Trak Information

**GSA EVENTS**
National Travel Forum 2006

**REFERENCE**
Federal Travel Regulation (FTR) Overview

**RELATED GSA TOPICS**
Relocation Income Tax Resources
Per Diem Rates

**FEDERAL LINKS**
Alaska, Hawaii, Puerto Rico, and U.S. possessions Per Diem Rates
Foreign Per Diem Rates
GSA Board of Contract Appeals Off Portal Website
GSA's Contracted Travel Management Centers
Hotel and Motel Fire Safety
U.S. Government Car Rental Program

**NON-FEDERAL LINKS**
Federal Premier Lodging Program
National Association of

| | |
|---|---|
| January 1, 2003 | $0.360 |
| January 21, 2002 | $0.365 |
| January 22, 2001 | $0.345 |
| January 14, 2000 | $0.325 |
| April 1, 1999 | $0.31 |
| September 8, 1998 | $0.325 |
| June 7, 1996 | $0.31 |
| January 1, 1995 | $0.30 |

The shortcut to this page is www.gsa.gov/mileage.

Last Reviewed 1/24/2006

Add to MyGSA

Printer Friendly format

Counties (NACO) Website
Contact Us
GSA Staff Directory
GSA Organizations
Choose... GO
Abbreviation Look-up
GSA Regions by State
Choose State: AK GO
QuickLinks
A-Z Links to GSA Topics