UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES SINATRA,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON TOWING & TRANSPORTATION CO. and<br>CYPRESS POINT SHIPPING, LTD.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)  NO. 04-cv-11077-NG<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT CYPRESS POINT SHIPPING LTD.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

So much for the vaunted civility of the Boston maritime bar.  Almost two months after the deadline for written discovery had passed, counsel for plaintiff James Sinatra ("Sinatra"), citing pressing personal issues, asked defendant, Cypress Point Shipping, Ltd. ("Cypress"), to agree to extend the time for Sinatra to serve written discovery.  In keeping with the practice of the local maritime bar, counsel for Cypress agreed.  Now Sinatra comes to this Court – acting on those untimely discovery requests – and seeks not only a default against Cypress, but also an order that Cypress "pay the reasonable expenses, including attorney's fees, caused by Cypress' failures."  Courtesy seems to be a one way street.

This Court should not default Cypress.  Instead, it should recognize the laches that fatally infect Sinatra's claims and grant Cypress summary judgment pursuant to Fed. R. Civ. P. 56.  At every turn, Sinatra has unreasonably delayed giving notice and asserting claims for a purported "injury" while climbing from the tug ETHEL TIBBETTS to the T/V MOUNTAIN LADY in November 2002.  As will be shown below, Sinatra himself does not remember how he was purportedly injured.  As the present discovery dispute shows, Sinatra's repeated delays have unfairly prejudiced Cypress, the former owner of the T/V MOUNTAIN LADY.  When seeking

relief from a missed discovery deadline, counsel for Sinatra reassured counsel for Cypress that they would "take your best-effort responses with a grain of salt taking into account the time elapsed since the date of injury and the turnover of the crew . . . ." Having been extended the courtesy, Sinatra now seeks to use his own unreasonable delay as a weapon to default Cypress. He further takes the perverse position that Cypress cannot defend this case, but its insurer must pay any amount he demands. Equity and the undisputed facts, however, demand that Sinatra's claims against Cypress be dismissed.

**STATEMENT OF UNDISPUTED FACTS**

**A.    Sinatra's Unreasonable Delay In Serving the Complaint.**

Sinatra filed the Complaint on or about May 21, 2004. SOF, ¶ 1. Although he named both Boston Tugboat Co., Inc. (later corrected to reflect Boston Towing & Transportation Co. ["Boston Tow"] as the owner of the tug ETHEL TIBBETTS) and Cypress Point Shipping, Ltd. as defendants, he did not serve that complaint on Cypress. *Id*., ¶ 2. Instead, Sinatra pressed his claim only against Boston Tow, twice amending his complaint to name Boston Tow as the sole defendant. *Id*., ¶ 3.

On or about July 19, 2005, alluding to but not disclosing so-called "information" that had only recently come to his attention, Sinatra moved for leave to file the Third Amended Complaint and add Cypress as a defendant. SOF, ¶ 4. This was two years and eight months after his alleged accident, and he had never given any notice whatsoever to Cypress. Leave having been granted, Sinatra waited until September 2, 2005 to serve a Summons and the Third Amended Complaint on Moran Shipping Agency, the port agent engaged to support T/V MOUNTAIN LADY when the vessel had called at the Port of Boston in November 2002, 34 months earlier. *Id*., ¶ 5. Moran Shipping forwarded the Third Amended Complaint to John

Eleftheriades, the insurance manager for Colonial Navigation Co., Inc. ("Colonial Navigation") in New York, which had acted as the U.S. agent for T/V MOUNTAIN LADY from 1996 until October 18, 2004.  *Id*., ¶¶ 6-7.

Cypress sold T/V MOUNTAIN LADY on October 18, 2004.  SOF, ¶ 8.  This was 23 months after Sinatra's alleged accident, and five months after Sinatra had filed but not served his Complaint in Cypress.  The vessel is now owned by Akar Deniz Taslmaciligi ve Ticaret Ltd Sirketi of Istanbul, Turkey and operates as T/V BAKI AKAR.  *Id*., ¶ 9.  Colonial Navigation ceased its role as U.S. agent for T/V MOUNTAIN LADY on October 18, 2004, when the vessel was sold.  *Id*., ¶ 10.  Although no longer acting as agent for the vessel in September 2005, Colonial Navigation gave notice to the UK Club, the vessel's insurer on the date of the alleged incident, of Sinatra's claim.  *Id*., ¶ 11.

> **B.      Sinatra's Repeated And Unreasonable Delays Prejudiced The Defense Of This Matter.**

Although he claims to have "sustained severe and painful personal injuries," while being transferred from the ETHEL TIBBETTS to the T/V MOUNTAIN LADY on November 14, 2002, Third Am. Cmplt., ¶ 9, Sinatra did not report his injury to the master or crew of the T/V MOUNTAIN LADY while aboard the vessel that day.  SOF, ¶ 12.  At a physical examination the following day, November 15, 2002, Sinatra reported that he did not have any back pain at all. *Id*., ¶ 13.  The first notice Cypress or its former U.S. agent even had of this lawsuit was in September 2005, 34 months later, when Sinatra finally served the local port agent with the Summons and Third Amended Complaint.  *Id*., ¶ 6.

By the time Sinatra finally served the Third Amended Complaint in September 2005, the T/V MOUNTAIN LADY was no longer within the possession, custody, or control of Cypress. SOF, ¶¶ 8-9.  Although well aware that the vessel was now owned by a Turkish entity, Sinatra

nevertheless demanded that Cypress make the vessel available for inspection and "cover the travel expenses" for his counsel to travel to the tanker, "wherever that may be." *Id*., ¶ 14. For his own part, however, Sinatra does not even remember how he was injured on November 14, 2002. As Sinatra himself confessed: "We're talking about something 37, -8 months ago." *Id*., ¶ 15.

### C.    Sinatra Misses The Deadline For Written Discovery And Asks Cypress To Extend A Courtesy.

By agreement of the parties and order of this Court, all written discovery was to be served no later than January 16, 2006. SOF, ¶ 16. Responses were to be served no later than February 15, 2006. *Id*. Although the Court endorsed the Proposed Scheduling Order on December 1, 2005, Sinatra ignored the deadline. He waited until March 31, 2006, more than two months after the deadline had run, to serve written discovery on Cypress. *Id*., ¶¶ 17, 18.

On April 3, 2006, Sinatra's counsel (actually the paralegal in counsel's office), contacted counsel for Cypress. SOF, ¶ 19. Sinatra's counsel asked that Cypress agree to extend the deadline for written discovery as a courtesy. *Id*., ¶ 20. Counsel for Cypress explained that the only discovery that would be available would be documents obtained from the local port agent Sinatra had served, and whatever information could be derived from Colonial Navigation, as the former U.S. agent for the vessel. *Id*., ¶ 21. Sinatra's counsel represented that he would "take your best-effort responses with a grain of salt taking into account the time elapsed since the date of injury and the turnover of the crew . . . ." *Id*., ¶ 22.

In reliance on those representations, Cypress agreed to respond to Sinatra's discovery requests, and produced documents obtained from Moran Shipping – the port agent apparently sufficient to receive service of process, at least according to Sinatra – on or about May 16, 2006. SOF, ¶ 23. Cypress also offered to make a representative of Colonial Navigation available for

- 4 -

deposition, but Sinatra refused that offer. *Id*., ¶ 24. Instead, Sinatra filed a Motion to Compel based on his late discovery requests. *Id*., ¶ 25. Incredibly, although Cypress had agreed to respond to the late-served discovery as a courtesy, Sinatra moved not only for a default against Cypress, but also sought his fees and costs in connection with his motion. *Id*.

Even more incredibly, Sinatra's counsel has refused Cypress the very courtesy he so recently requested. With court-referred mediation scheduled to occur only ten days after the response to Sinatra's Motion to Compel was due, Cypress requested that the parties agree to a brief two week stay of proceedings to see if the matter could be mediated without incurring further needless litigation costs. SOF, ¶ 26. Despite the well-known courtesy of the Boston maritime bar – and his own repeated reference to that courtesy in connection with obtaining discovery from Cypress and in dealing with various discovery motions filed by counsel for Boston Tow – counsel for Sinatra refused to assent to this limited stay. *Id*., ¶ 27. Cypress filed its Motion to Stay Proceedings on June 30, 2006 – presumably, Sinatra will file his opposition by July 14, 2006.

## **ARGUMENT**

### A.    **Sinatra's Unreasonable Delay Has Prejudiced The Ability Of Cypress To Defend This Matter, And His Claim Against Cypress Should Be Dismissed.**

This Court should not enter a default against Cypress, but should instead grant Cypress summary judgment pursuant to Fed. R. Civ. P. 56. Sinatra delayed notifying Cypress of his claim, and his repeated delays – having caused material prejudice – constitute laches. In maritime suits, laches bar a claim for relief when a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party. *See Puerto Rican-American Ins. Co. v. Benjamin Shipping Co. Ltd*., 829 F.2d 281, 283 (1st Cir. 1987). "The application of the doctrine is within the sound discretion of the district court," and courts have

LITDOCS/646713.1

not hesitated to exercise that discretion, even on a motion for summary judgment. *Id.* (quotation omitted). Here, Sinatra's failure to notify the master or crew of his injury, and his subsequent delay in serving Cypress with his complaint once filed, was both unreasonable and has resulted in prejudice to Cypress. The pending Motion to Compel by Sinatra is itself further evidence of prejudice to Cypress.

"In the maritime context, a laches analysis utilizes as a benchmark the limitations period contained in the most analogous statute." *TAG/ICIB Services, Inc. v. Pan American Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000). That limitation period is not dispositive of the claim, but merely determines which party bears the burden of proof that plaintiff's delay in filing suit was unreasonable and caused prejudice. *See Puerto-Rican American*, 829 F.2d at 283 ("[I]f a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant."). Sinatra filed his Motion to Amend and attached Third Amended Complaint on or about July 19, 2005, and served the Third Amended Complaint on or about September 2, 2005, just barely within the three-year statute of limitations for tort claims. Thus, Cypress bears the burden of showing that Sinatra delayed unreasonably in making his claim against Cypress, and that this delay will prejudice its defense. This burden is easily met.

Sinatra knew he had a claim against Cypress at least no later than May 21, 2004, when he filed his original complaint. He chose not to serve that complaint on Cypress, and subsequently amended the complaint to eliminate Cypress as a defendant. Had Sinatra served the original complaint in May 2004 – even if he had served the local port agent used by T/V MOUNTAIN LADY in November 2002, as he ultimately did – then Cypress would have had notice of the claim while it still owned the vessel. Sinatra cannot seriously argue that he required over sixteen

months to determine how to serve process on the vessel owner – he made a conscious decision to waive those claims. Instead, by the time Sinatra served the Third Amended Complaint in September 2005, the vessel had been sold, so that all documents and other materials from the vessel were no longer available. Indeed, the very basis for Sinatra's Motion to Compel – and his request for discovery sanctions, including a default, as well as attorney's fees and costs – is that Cypress cannot satisfy unreasonable discovery demands made almost four years after the alleged incident occurred.

In *Puerto-Rican American*, the First Circuit affirmed the dismissal of claims against a late-added defendant on similar facts. In that case, the First Circuit held that a delay of three years was unreasonable where the plaintiff had notice of its claims against a tow company shortly after the alleged incident. *See* 829 F.2d at 284 ("It is clear that plaintiffs were aware of the tug's involvement and possible negligence only days after the grounding and, although discovery might have highlighted this, no new facts were unearthed in this respect."). The First Circuit observed that the lack of notice prejudiced the tow company where it had not been able to conduct an investigation of the alleged incident and no longer was in possession of the logs or other business records from the relevant time period. *See id.*

The delay by Sinatra was similarly unreasonable, and the prejudice to Cypress is at least as great. Indeed, Sinatra seeks to compound the prejudice to Cypress by moving for discovery sanctions against Cypress for failure to provide discovery – even though it is his failure to give notice to the master or crew of the T/V MOUNTAIN LADY that he had been injured, and his delay in giving notice of his claim – that prevented Cypress from preserving the logs or other business records Sinatra now demands. Accordingly, far from entering a default against Cypress, this Court should dismiss the claims against Cypress altogether.

B.    **A Default Is Not The Appropriate Remedy Where Cypress Has Attempted To Respond To Discovery In Good Faith And In Reliance On Representations Made By Sinatra's Counsel.**

In reliance on representations by Sinatra's counsel that he would "take your best-effort responses with a grain of salt," Cypress made a good faith effort to respond to the late discovery propounded by Sinatra. It has been rewarded for its troubles with a Motion to Compel that seeks not only a default against Cypress, but also attorney's fees and costs. Entering a default against Cypress would not be equitable, and ironically, would not advance Sinatra's interests in this case. Rather, entering a default in this matter would only serve to prolong the litigation and waste further judicial resources on this marginal claim.[1]

Rather than seeking discovery in a good faith effort to establish the merits of his claims, Sinatra instead is wielding discovery as a weapon to gain improper leverage over Cypress and its insurer at the time of the incident, the UK Club. The only reason the UK Club has continued to defend this matter on behalf of its insured is because Massachusetts law allows a direct action by a judgment creditor against the insurer of the judgment debtor. *See* Mass. Gen. Laws c. 175, § 112; *Saunders v. Austin W. Fishing Corp.*, 352 Mass. 169, 171-72 (1967) (holding that direct action statute applied to marine indemnification policy even if insured does not first satisfy judgment). According to Sinatra, the UK Club cannot defend this matter, because Cypress is not

---

[1]    Arguably, the Court need look no further than the representation made by counsel for Sinatra. It is well-established that judicial estoppel should be employed when a litigant is "playing fast and loose with the courts," and when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) (quotation omitted). Here, Sinatra's counsel persuaded Cypress to respond to late-served discovery by representing that responses would be taken "with a grain of salt." With the difficulties presented by that discovery having been disclosed, he should be held to that promise.

available to provide discovery.  At the same time, Sinatra contends that the UK Club must satisfy any default judgment entered by this Court.[2]

If Cypress is unable to defend this matter because of a default, it is questionable whether the UK Club would be required to pay any judgment, but it is certain that Sinatra's efforts in this regard would result in further litigation and waste of judicial resources.  Even assuming Sinatra successfully obtained a default judgment against Cypress, he would then need to file a separate claim against the UK Club to reach and apply the Cypress indemnification policy.  *See Rogan v. Liberty Mut. Ins. Co.*, 305 Mass. 186, 188 (1940) ("A valid judgment was a prerequisite of the present suit; and there was none.").  The rights of any injured party to seek satisfaction of a judgment by proceeding against an insurance policy are derivative of the rights of the insured, and are subject to any defenses available to the insurer against a claim by the insured.  *See Morse v. Employers' Liability Assurance Corp., Ltd.*, 3 Mass. App. Ct. 712, 712 (1975) (rescript).  The UK Club would then be forced to litigate a host of issues as to whether it could properly disclaim coverage in that second lawsuit.  *See, e.g., Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 488 (1990) (setting forth standards for insurance company to disclaim coverage of insured who fails to cooperate with defense).

---

[2]  Even if the Court were to enter a default against Cypress, it is by no means certain that Sinatra would obtain a judgment against Cypress.  Instead, consistent with the long-standing maxim that courts should avoid inconsistent judgments, Cypress would await the outcome of the trial on the merits between Sinatra and Boston Tow.  *See, e.g., Gentle Wind Project v. Judy Garvey*, 407 F.Supp.2d 280, 281 (D.Me. Jan. 3, 2006), *quoting Frow v. De La Vega*, 82 U.S. 552, 554 (1872).  If Sinatra prevailed on the merits against Boston Tow, then Cypress might be jointly and severally liable with Boston Tow; assuming Sinatra was unable to establish any injury arising from the alleged injury, or established little, if any damages, however, then that judgment would inure to the benefit of Cypress.  *See also* Wright & Miller, 10A Fed. Prac. & Proc. Civ.3d § 2690 ("Thus, a plaintiff who prevails on liability against the nondefaulting defendants is entitled to a judgment against both the defaulting and nondefaulting parties.  On the other hand, if the action is dismissed, it should be dismissed as to the defaulting party as well as the remaining defendants.").

Sinatra's "heads I win, tails you lose" argument is not only utterly inconsistent, but also of questionable constitutional validity. He seeks to prevent an insurer from defending the matter, but at the same time intends to force that insurer to pay. *See, e.g., Podolsky v. Devinney*, 281 F.Supp. 488, 498-99 (S.D.N.Y.1968) (recognizing constitutional difficulties presented where insurer not permitted to defend claim against defaulted insured). Sinatra cannot seek to disqualify Cypress from defending this matter, and then seek to recover a default judgment against Cypress's insurer. Although this matter should be dismissed under the equitable doctrine of laches, Cypress is ready, willing, and able to defend against Sinatra's claim. The fact that Cypress would be forced to defend with no access to logs or other records after almost four years since the alleged incident would seem to be sanction enough.

Alternatively, since Sinatra takes the position that Moran Shipping is an adequate agent for Cypress to satisfy service of process requirements (a position that Cypress did not challenge to avoid needless motion practice before this Court where the matter seemed easily resolved on other grounds), Cypress respectfully requests that the Court enter an order declaring that Moran Shipping may respond to the interrogatories and provide a Rule 30(b)(6) deponent based on the information available to Moran Shipping. If Sinatra is satisfied that service on Moran Shipping to establish jurisdiction over Cypress comports with due process, then Sinatra no doubt would be satisfied with whatever answers Moran Shipping can provide.

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I certify that counsel for Cypress conferred with counsel for all other parties on July 10, 2006 in an attempt in good faith to resolve or narrow the issues presented by this motion.

- 10 -

## REQUEST FOR ORAL ARGUMENT

Cypress respectfully submits that oral argument may assist the Court in resolving the issue pending and requests oral argument pursuant to Local Rule 7.1.

## CONCLUSION

For the foregoing reasons, Cypress respectfully requests that this Court enter an order dismissing the claims against Cypress pursuant to Fed. R. Civ. P. 56.  In addition, Cypress respectfully requests that this Court deny Sinatra's Motion to Compel, or in the alternative, enter an order that Moran Shipping may respond to discovery as the "agent" of Cypress.

Respectfully submitted,

**CYPRESS POINT SHIPPING, LTD.,**

By its attorneys,


*/s/ Brandon L. Bigelow*
Robert E. McDonnell, BBO #331470
Brandon L. Bigelow, BBO #651143
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated:  July 10, 2006

LITDOCS/646713.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served on counsel for each other party by electronic mail and first class mail on July 10, 2006.


*/s/ Brandon L. Bigelow*
Brandon L. Bigelow

LITDOCS/646713.1